[No. 10299.    Department Two.    June 13, 1912.]

## ED. DOLAN, JUNIOR, *Respondent*, v. SLADE LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—SAFE APPLIANCE—EVIDENCE—SUFFICIENCY. The fact that a resaw started automatically is insufficient to establish negligence in not providing proper tension for a belt connecting the machine with the power, where the plaintiff offered no evidence on the subject and defendant's witnesses testified that the belt was kept at all times in such a tension that it would not start the machine automatically.

SAME—GUARDING MACHINERY—QUESTION FOR JURY. Whether the gears of a resaw should have been guarded under the factory act, requiring the guarding of all gearing with which employees are liable to come in contact, is for the jury, where it appears that they could have been advantageously guarded, and that the operator was liable to come in contact with the gears whenever it became necessary to adjust the rolls, although the operator was expected to stop the machine before adjusting the rolls.

SAME — OPERATION OF MACHINERY — CONTRIBUTORY NEGLIGENCE— QUESTION FOR JURY. It is for the jury to say whether it was contributory negligence for an operator to attempt to adjust the rolls of a resaw without stopping the machine, the thumbscrew being near the gears, although defendant's witnesses testified that he was expected to do so.

SAME—ASSUMPTION OF RISKS. The operator of a resaw does not assume the risk from the automatic starting of the machine from the fact that he knew that it had once before so started and failed to notify the employer thereof, since the employer may have had other notice.

MASTER AND SERVANT—INJURY TO SERVANT—ACTIONS—ISSUES AND PROOF—INSTRUCTIONS. In an action for injuries caused by the automatic starting of a resaw, through the alleged improper tension of the power belt by reason of too great a weight thereon, it is error to admit evidence that a belt-shifter would have been a safer device for starting the machine than a weight on the belt to increase its tension, and to instruct that the lack of a belt-shifter can be considered by the jury only in determining whether the belt was kept at proper tension; since the question whether a belt-shifter would have been safer can have no bearing on the question of the tension on the belt.

[1]Reported in 124 Pac. 133.

Appeal from a judgment of the superior court for Che-
halis county, Sheeks, J., entered October 10, 1911, upon the
verdict of a jury rendered in favor of the plaintiff for in-
juries sustained by the operator of a resaw in a mill. Re-
versed.

*Bridges & Bruener*, for appellant.

*A. M. Abel* and *W. H. Abel*, for respondent.

FULLERTON, J.—The respondent was injured while in the
employment of the appellant, and brought this action to re-
cover therefor. He prevailed in the court below, and this
appeal is from the judgment entered in his favor.

The injury occurred while the respondent was working in
the mill of the appellant on a machine known as a Berlin
resaw. The machine was a stock machine of standard make,
similar machines being in common use in sawmills throughout
the country generally. The mechanism by which the machine
was connected with the power or drive shaft of the mill is not
made clear in the record, but it can be gathered that the
connection was made by a belt which at its natural tension
did not cause sufficient friction on the pulley connected with
the machine to put the machine in motion, but put it in mo-
tion only when the tension of the belt was increased. The
contrivance for increasing the tension was a weight, which
was controlled by a rope the end of which was fastened near
the stand of the person operating the machine. On the day
of the accident, the respondent started the machine to cut
certain boards to a bevel angle. He discovered after the work
started that the guide rolls which fed the boards into the saw
did not have the proper angle, and he stopped the machine,
procured a wrench and started to adjust them. The rolls
were adjusted by means of a thumbscrew, placed towards
the bottom of the machine immediately in front of and near
certain cogwheels forming a part of the gearing of the ma-
chine. As he was working with the thumbscrew, the machine
suddenly started, as the respondent claims, automatically,

caught his hand in the gearing, and crushed off two of his fingers.

In his complaint the respondent set up two grounds of negligence; first, that the appellant did not keep the belt connecting the resaw with the power shaft of the mill at a proper tension, thereby rendering it possible for the machine to start into motion automatically; and second, that the appellant had failed and neglected to place guards over the gearing on which the respondent received his injury. At the trial, the respondent offered no direct evidence tending to show that the belt was not kept at a proper tension. The other side, however, introduced the evidence of its millwright and others of its employees to the effect that the belt was kept at all times in such a tension that it would not start the machine in motion unless increased by means of the weight, and that it was at a proper tension at the time the respondent was injured.

On the second ground of negligence, the respondent introduced evidence to the effect that the gearing was not guarded; that it could have been guarded effectively with due regard to the ordinary use of the machine; that the thumbscrew, which afforded the only means of regulating the feed rolls, was placed near the gearing, rendering it dangerous to attempt to move it while the machine was in motion. The appellant introduced evidence tending to show that the gearing was in such a position that no one could come into contact with it while operating the machine; and that to change the feed rolls the machine should be stopped; that it was not known to any of the officers or employees of the appellant having the mill in charge that this particular machine had ever started automatically. It was shown, however, that the machine, some six weeks or two months before the accident, did start without the aid of the weight, a fact known to the respondent but which he did not communicate to the appellant until after the accident. The respondent also offered, and was allowed to introduce over the objection of the ap-

pellant, evidence to the effect that a belt-shifter would have been a better and safer device for starting and stopping the machine than the appliance used by the appellant.

On the trial at the conclusion of the evidence, the appellant challenged its sufficiency to justify a verdict for the respondent. The challenge was overruled by the court, and its action in so doing constitutes the first error assigned. The challenge is based on the contention that no negligence was shown on the part of the appellant. It is said that the proofs failed on both allegations of negligence set forth in the complaint; that there was no evidence at all that the belt operating the resaw had not been kept at its proper tension, and that it was shown that there was no reasonable necessity for placing a guard immediately over the gearing on which the respondent was injured, as the same was sufficiently guarded by the means which the appellant had afforded to stop and start the machine. As to the tension of the belt, we agree with the appellant that no negligence in that regard was shown; that the evidence which the court admitted for that purpose does not tend to establish the fact.

As to the necessity for a guard immediately over the gearing, we think that was a question for the jury. The factory act provides that the gearings of all machinery with which employees of a factory are liable to come in contact while in the performance of their duties shall be provided with reasonable safeguards, where it is practical to guard them, and where they can be effectively guarded with due regard to the ordinary uses of the machinery. The evidence abundantly shows that this particular gearing could have been guarded effectively without in anyway interfering with the due operation of the machine; and it was shown, further, that the operator of the machine in the performance of his duties was liable to come in contact with it whenever it became necessary for him to adjust the pitch of the rolls which fed the saw. The fact that the operator was expected to stop the machine before he attempted to adjust the rolls, and that an

appliance for that purpose was furnished, does not necessarily excuse the failure to guard. Machinery connected with moving power shafts which are stopped and started by means of contrivances depending for their efficiency on correct measurements and a proper adjustment of weights are liable to become out of adjustment at any time, and stop or start automatically. Whether the appellant should have anticipated this fact and guarded this particular gearing we think was for the jury, especially in view of the somewhat definite provisions of the statute to which we have referred.

The appellant requested the following instructions, which the court refused:

"I instruct you that if the plaintiff started to or did tilt the rolls on the resaw machine in question without first stopping the machine thereby causing his injury, then the plaintiff would be guilty of negligence as a matter of law, and he cannot recover, and your verdict must be for the defendant.

"If you find that the plaintiff had knowledge of the fact, if it is a fact, that the machine prior to the accident had started automatically, I instruct you that it was his duty to notify the defendant or its foreman of such fact, and if he failed so to do he assumed the risk of injury and cannot recover provided you find further that the method or means provided by the defendant for starting or stopping the machine was a suitable and proper guard against accidents from exposed gearings."

These instructions were properly refused. The first, on the ground that the deduction to be drawn from the act suggested was for the jury to draw rather than the court. As we say the statute requires the gearings of all machinery with which an employee is liable to come in contact to be guarded when it is practicable to do so, hence, in this instance if this was a gearing that should have been guarded the respondent did not assume the risk of injury therefrom as a part of his contract of hire. His liability was for contributory negligence, and whether the act imputed by the instruction amounted to contributory negligence was for the jury. It was a question on which reasonable minds might

reasonably differ. The second was properly refused because it is not the law that the respondent would assume the risk of injury from the automatic starting of the machine merely because it so started once before and he failed to notify his employer of the fact. Whether his knowledge would estop him from complaining depends upon other and additional facts. It may be that the employer already knew the fact, or the employee had good reason to believe that the employer knew it. In either of these cases, and in perhaps many others, no estoppel would follow. The instruction is faulty in that it does not take into consideration these possibilities.

With reference to the evidence concerning the belt-shifter, the court gave the following instructions:

"The plaintiff claims defendant was negligent. First, in not guarding the gearing; second, in allowing the belt to be kept at an improper tension. The lack of a belt-shifter can be considered by you only in determining whether the belt was kept at a proper tension.

"The only negligence complained of by plaintiff is that the drivebelt on this machine was not kept at a proper tension thereby causing the machine to start automatically, and that the cogs and gearing were unguarded contrary to law. In considering this case you must confine yourselves to these issues and disregard all testimony that a belt-shifter was a safer or better appliance than the one used by defendant in stopping and starting the machine, except as such evidence may bear upon the question of the tension of the belt."

The admission of this evidence and the giving of these instructions was error. Tension of a belt usually has reference to the degree of strain to which it is subjected, and in this case it had reference to the fact whether the belt was so tight as to cause it to create friction enough on the pulley connected with the machine to put the machine in motion without the addition of the weight. Whether a belt-shifter would have been a better device for stopping and starting the machine than the device installed by the appellant could not possibly have any bearing on the question of the tension

of the belt. The respondent argues, however, that if the evidence had no bearing upon the question of the belt it was not injurious, and hence not reversible error. But this argument overlooks the fact that the court in its instructions charged them, in effect, that it did have some such bearing. If the jury obeyed the instructions of the court—and we must presume that they did—they gave it heed in determining the issues, and in doing so founded the verdict on erroneously admitted evidence.

For the error noticed, the judgment is reversed and the cause remanded for a new trial.

MOUNT and ELLIS, JJ., concur.

MORRIS, J., concurs in the result.